First case of the morning call 209-1181 in reading Nicholas L on behalf of the appellant Ms. Barbara Govan, on behalf of the appellee Ms. Diane Campbell. Thank you. Ms. Govan. May it please the court counsel, my name is Barbara Govan, I represent the respondent Nicholas L. This case is on the response appeal of the order for involuntary treatment. As a preliminary matter, I filed a motion to cite additional authority, Laura H. We granted that yesterday. Okay. Five minute order. Okay. And then I would like to leave, I spoke to other counsel to cite Wendy T., which I believe this panel just issued on Friday. Do you have the problem with that? No, I don't. Okay. You may. Okay. This case, as I mentioned, is on the response appeal of the order for involuntary treatment. In this case, the trial court erred in entering this order for several reasons. First, that the state did not prove by clear and convincing evidence that Mr. L. lacked the capacity to make a reasoned decision about the proposed treatment. As you well know, by first, by failing to provide sufficient information to him and by failing to prove the element of capacity. Second, the evidence provided did not support what the order authorized, namely the combination of medication to be administered and the people authorized to administer the medication. Finally, this appeal qualifies for review under the three exceptions to the mootness doctrine. And I would like to address the issue of mootness first. Would you address that first and speak specifically to the public interest exception, please? Okay. Basically, there's no dispute that this case is moot. And Alfred H. H. said that most mental health appeals will usually meet an exception to the mootness doctrine. Basically, the public interest exceptions met when there's a liberty interest involved, such as this, the forced medication. When there's a need for authoritative determination and that there's a likelihood of future reoccurrence. Well, counsel, wasn't Alfred H. a little more specific than that, not focusing on the fact that a liberty interest was involved or a mental health case, but more what the specific issue in a particular case was? For example, sufficiency of the evidence. Doesn't this case boil down to sufficiency of the evidence? And how would that meet Alfred H.'s criteria, the Supreme Court's criteria? Well, I think it's a question also of statutory interpretation, whether Section 102 regarding providing the written information to the person is not just the risks, benefits, but also information about alternative forms of treatment. So that's not just the sufficiency of evidence presented. Also, the issue of the capacity where, you know, I'll get further, the issue of whether, you know, the doctor testified that he didn't make a rational decision versus a reasoned decision. I think that's the issue of law, whether rational decision is versus reasoned decision versus more issue of evidence. All right. So you think it does meet the first prong of Alfred H. because it involves a question of statutory interpretation? Right. And how does it meet the second prong? Basically, you know, before I filed this, there was no issue, there was no decision on the issue of the alternative forms of treatment about written information before Laura H. was determined. But also there's really been no case determined whether on point on the issue of rational versus reasoned decision on the issue of capacity. And also on the third issue, too, on the issue of the order, there's no really detailed precedent whether the state has to present evidence of who is to administer the medication before it's entered into an order. It's required in the order. There's precedent from this district saying it's supposed to be in the order, but there's no case where the state fails to mention it as evidence and then it's entered in the order. And your sufficiency of the evidence argument, which you do have on both, is your strongest argument regarding what's the collateral consequences exception or is it the public interest exception? Probably the collateral consequences exception because there's nothing in the record saying he ever faced involuntary medication order. He's still relatively young. I believe he's 23 or 24. You know, he probably could face involuntary medication hearings in the future. Hopefully not, but he may. And determination that in the past there was an involuntary medication order or finding that he lacked the capacity to make a reasoned decision could affect in future determinations. Your poem in the brief says that because there's nothing in the record regarding prior adjudications that, you know, somehow you have to prove that. I don't know why you would prove it at trial, but at least I don't feel. Well, I would say I do a lot of trial work on this, and most of the times if there is a past order, the state brings it out because it's evidence in their favor. You know, they did bring out that he was hospitalized prior. You know, it's evidence in their favor that there was a prior order. I think also we put the bonus on the pellet level of how do you determine beforehand if he ever had it when it was never raised in the trial level. But given his age and was never mentioned prior, it wasn't mentioned that he had prior involuntary medication orders, and also I did a database search. There was no published opinions with him and nothing in our records that we ever represented him before an involuntary medication appeal. It's likely that this was his first one. But you say there was an order entered, wasn't it simultaneously with this, for involuntary admission? Oh, he was – it actually was transferred down to the 5th District in Mount Vernon, and actually the state confessed error in that appeal. So that's an involuntary commitment order. So that order actually is vacated – will be vacated because the state confessed error. Oh, I see. Okay. And that just occurred about a week ago, so I couldn't mention it in my reply briefs. Oh, okay. Okay. And with regard to the written information provided to a party, as you all know, to prove the issue of lack of capacity, the state has to prove two elements. That information is provided to the party, and second element, that because of the mental illness, the person lacks capacity to make a reasoned decision. And the issue of written information is required by both code and precedent. There's strong precedent that violation of – failure to provide this written information is a violation of due process. So verbal information is not sufficient. The state even acknowledged in its response that it's not a harmless error. And as Laura H. stated, the treatment – they have to provide written information about the risks, side effects, and alternative forms of treatment. And treatment is more than just medication. Isn't it clear, though, that your client really knew the risks? He actually verbalized the risks in court as to what the risks and the side effects were of the medication. Would that make a difference? No. Substantial compliance doesn't – there's repeated precedent that, you know, the written information has to be provided. And the key thing is the alternative forms of treatment, which is not just ECT but counseling, group therapy, other forms of treatment. And by statute, Section 5.1.128, when they – the Mental Health Code defines treatment as more than just medication. They include, actually, psychotherapy. And also, it wouldn't make sense statutorily under Section, you know, 102.85 requires written information about alternative forms of treatment if they wouldn't include this. And, you know, if they just wanted information about medication, Section 102.85 wouldn't make sense. And also, there's an element in proving one of the factors is that the other lesser forms of treatment are – well, medication would be the least restrictive form of treatment. And that section wouldn't make sense if there were other – were not other forms of treatment. Did the doctor testify that there were no alternative forms of treatment other than psychotropic medication? I think he testified – I'm trying to remember. I think he said that that was the least restrictive. I think that was his indication. You know, there is, you know – and the Mental Health Code acknowledges that psychotherapy is another form of treatment that someone could be given. And, you know, Nicholas L., my client, showed a remarkable lack of confusion in some of his testimony compared to some of the clients I have. That, you know, and I think it may have helped if he would have been given written information on why counseling, why other behavioral or other forms of counseling would not work in his case. Do you need to show prejudice, as counsel indicates? Not for the issue of written information, because it is such a key element of proving capacity. Because, you know, how can you make a reasoned decision if you don't get the written information? So there's a long stream precedent that says it's a plain language, you know, plain error issue. And also, I think, you know, forcing the respondent to prove prejudice is switching the element of compliance with the code to the respondent, where it's really the state who's depriving my client of their liberty interest. And it really would be simple for the state to prove this element or to provide the written information if they did provide it to him. With the issue of capacity – and actually, this case, I think, is really very interesting. Because, you know, capacity – an element the state must prove is that the person cannot make a reasoned decision with regard to taking the medication. Four times, the doctor stated that Mr. – my client – had capacity. And even one of the time, the trial court asked directly, does he have the capacity to make a decision? And the doctor said yes. And then, finally, on the fifth time, the, you know, the state said, does he have – I think it was a very – probably a pretty leading question. And finally, the doctor said, no, he doesn't have the capacity. And in this case, you know, as this district in Israel stated, they made a very nuanced determination of capacity. Capacity is not really a simple yes or no. But here, my client signed voluntary. He was – there was no allegations that he was delusional or that he was paranoid. He testified that he wanted – he was taking medication at the time of the hearing. It was – the doctor wanted to give him an older form of the medication. He was taking Invegra, which is a newer form of Risperidol. He wanted to continue to take that newer form because he was feeling good at that point, which is a reasoned decision of why he would want to continue with his present form of medication. The doctor, you know, was testifying, well, this is not a rational decision of not taking the Risperidol. And, of course, most doctor's recommendations would be rational. Let's say if you have kidney failure, a rational decision most of the time would be dialysis. Or if you have cancer, you know, it would be chemotherapy. But you have a right to make a non-rational decision as long as you can make a reasoned decision. And that's why, you know – and Mr. L. gave reasoned explanation why he didn't want to take Risperidol, that he wanted to continue with his present form of treatment. So it's – if the code wanted the involuntary medication to be given if the person made an irrational decision or unable to make a rational decision, they would have used the term rational. But they really put the – I think the term reasoned for a reason, because a person has a right to refuse treatment even if it's against their best interest. So it may have been for his best interest to switch to this other medication, but he made a reasoned decision because his current medication he was doing well on and he wanted to continue with the newer form of medication. But what about after he would leave the hospital? Well, you know, the issue of future – what's troubling on that part, I was looking – the order actually only puts hospital personnel authorized to administer this medication. So, you know, the issue of future compliance is really not even addressed in the order, because it's not – you could put – and I've had cases where you put social worker, you know, through social service agencies and nurses who could administer the medication. There was nothing stated that people outside the hospital area would administer this medication to them. Also, unfortunately, there is always a pattern of – a large pattern of noncompliance with medication in the future. But the court says that – and the statute says that it's the current state. If he currently lacks capacity to make a reasoned decision, not in the future or not in the past, if you put future lack of capacity, it opens the gate really wide open. And I'm not saying people who aren't delusional or very paranoid or have no reason to, you know, make a – you know, to refuse medication, and I've heard varied reasons, you know, that element's proven. But in this case, you know, the doctor acknowledged four times he had capacity, and he acted like Mr. Allen had capacity because he gave him the medication. He was, you know, currently prescribing the Avegra, and my client was taking it and gave a reasoned or, you know, a non-irrational reason why he wanted to continue with it. Counsel, the buzzer went off, but you will have an opportunity to have time on the button. Okay. I rest on my brief for the other amendments. Thank you. Ms. Campbell. Good morning, Your Honors. Good morning. I'll follow somewhat the same pattern and then let me know if you want to move on to any issues. First, for the mootness issue, this is not a question of public interest. Alfred H. H. does give a narrower restriction in that it should be a public question needing guidance  In my opposing counsel's brief, she cites A.W. and then did the motion to add authority for Laura H. So that's one of the issues that, you know, now has authoritative determination for it. Does Laura H. really address this issue? I know Laura H. addresses, I think it's, there were benefits and treatment alternatives, there were risks and treatment alternatives. So, I mean, treatment alternatives is in there, but it's one of two things. This is only one thing. Is it a little different? I don't view it as, in part that's tied with my argument for the treatment alternatives. Do you want me to go into that portion now or do you want us to move on? I just want to know if it's different, you know, for the public interest exception. Do people need to, you know, out there need to know that, you know, have an answer to this question? I think in Laura H., the court says that the respondent should be advised about appropriate alternative treatments. And I will go into what the appropriate alternatives and the fact that if a treatment is not appropriate, you know, there's no real reason to advise the respondent against it. And the respondent was appropriately advised in this case. For the capacity issue, that's one of the most heavily litigated ones. Wait one second, let's go back to the public interest exception. How is it that you feel that that's not applicable here? Excuse me? How is it that you feel that that is not applicable here? Because for the question for written notification, I believe it's covered in Laura H. and also in AW. The question of lack of capacity, as I said, is one of the most heavily litigated. There's tons of authority on that. Some of the best are two cases by this court, which is Israel and Lisa P., where the court distinguishes that simply because a person has the capacity to consent to a specific medication and, in fact, is doing that does not mean that the court can't petition for other medications or other varieties of medication. They distinguish that and they say even though someone is consenting and has made a valid consent to one medication doesn't mean that they lack capacity to consent to other treatments or medications. The other issue, the problem with the written order as it is, I believe is no more than a Scrivener's error. Certainly the, and I think that's... Do you mean with respect to who can administer the medications? Is that what you're talking about? No, I'm talking about whether the word also was written in the order. For the part on who can administer medications, I believe that this court, I believe, has addressed that. They have always found that the phrase with a particular doctor's name and his designee's was appropriate and that is exactly what this order says. It says Dr. Colonian and his designee's. There's no requirement in the statute or in the case law that the particular designee's be proven up. There is the fact, part of what defense counsel said was that it only, even the unnecessary list says just hospital personnel. It's based on the defendant's status at that time. There is always the option of coming into court and getting a modification of the order or simply Dr. Colonian can designate the social worker as the person to administer the medications as has been done previously. You addressed in your brief the harmless error analysis. How do you get around some of the cases that indicate, in Ray A.W. or some of the cases that indicate that this harmless error does not apply to a lack of notification? Well, my argument would be that actually there was, in fact, sufficient notification and I'll move on to that. In this case, the statute says that the person should be advised in writing of appropriate alternative treatments. In this case, it started out as a petition for ECT treatment and for psychotropic medications. Dr. Colonian testified at the hearing that the respondent was given written notification concerning both the ECT and the medications that he requested. The record also shows that the respondent is involved with ACT, which is assertive community treatment. In which case, that's a program for people who have a history of difficulty complying with their treatment management. So in this case, the record shows that the respondent has people coming to his place twice a week for a face-to-face meeting with him to ensure that he's managing his illness. There's no indication that he is, in fact, going to mental health treatment for psychotherapy or that's considered an appropriate treatment. So there's no indication that, in fact, psychotherapy is appropriate available treatment. So the respondent got the written notification for the two appropriate treatments, which is ECT or the medication. In the course of the hearing, the ECT was partially discussed. The doctor said that he had been involved in conversations with the respondent and the respondent's mother and that they wanted to try the medication treatment rather than the ECT. So he withdrew his request for the ECT. But nonetheless, all that information, the respondent received that and it was discussed with him. So he had sufficient notification for the available treatments. In writing. Correct. I'm just checking that out to make sure we're done with that area before I move on. As I said, the only thing that's ever been required for designating the person is that, and I think in the respondent's brief she notes the governor's commission, which says they want a person who is familiar with the respondent's treatment program to be designated as the person, you know, as the point person, and that's what happened here. Dr. Cullinane filed the petition. He's the respondent's treating doctor, and that's the person that the trial court designated as appropriate to administer the medication. There is, in fact, someone who is responsible and familiar with the respondent's case who is authorized to do that. His qualifications were stipulated to at the beginning of the trial, so I don't see any problem with the written order in that respect. The sufficient notice, you're arguing that this respondent had sufficient notice of alternative treatments. Correct. And that came in the form of different things happening over different times? Is that what you're arguing? What happened, the doctor was asked if the respondent had received written notification concerning the medications and the EC treatment. The doctor's response was yes. There was no cross-examination on that and nothing further. That's all that's required is the fact, the statement in the record that he received the written. There's nothing in the case law or in the statute that requires that other documents be filed as exhibits to prove that out or anything. All you need to have is evidence in the record that he received the appropriate written notification, and that's what we have here. Okay, go ahead. The appropriate written notification of alternative treatments, specifically of alternative treatments. Correct. And where is that in the record now? It's at page, I think maybe 47. Sorry, page 71. But you're arguing that. Wait, that's the written order. Yes, go ahead. Sorry, it's on page 49 of the record. The respondent received written notification regarding the ECT and the psychotropic medications. And your argument as to why there were not alternatives to that is that they weren't relevant to his. Those are the appropriate alternatives for this respondent. And where does the word appropriate or relevant appear in the statute? I believe that is section 102. 102A5 says as well as alternatives to the proposed treatment. It doesn't have any of those adjectives modifying the noun alternatives. All right. If the services include the administration of ECT or psychotropic medication, the physician or designee shall advise the recipient in writing of the side effects, risks, and benefits of the treatment, as well as alternatives to the proposed treatment, to the extent such advice is consistent with the recipient's ability to understand the information communicated. So I'm not sure where you're, what you're relying on. Perhaps, I'm looking for my copy of Laura H., which I can't find. If nothing else, I would think it would be a matter of logic. For an example to sort of illustrate that is if you have a severely violent respondent who needs to be in a secured setting, what would be the use of advising him about halfway houses? No one is going to accept him. It's not an appropriate treatment. In this case, I'm sure that AA or NA meetings might have been available through the community health center, but there's no record that this respondent has any sort of alcohol or narcotics problems. So what would be the use of advising him about various treatments that aren't appropriate for him? As I said, in this case, we know that he's on ACT, which is a sort of community treatment, and that they're coming to his house twice a week to have face-to-face meetings with him. There's no indication that he is going in for any psychotherapy at any of the mental health centers or that anyone is coming to visit him. So I think that, in the doctor's testimony, is that with this respondent's condition, he's going to, in order to successively manage his illness, he's going to need medication for the rest of his life. So you're submitting there is no alternative treatment? Well, the only alternative would be ECT, which he was notified about. The alternative could be to stay on the medication he's on while he's in the hospital as long as he can take it. That goes into the capacity also, and the doctor stated that he advised the respondent about the medications, and he explained that the Invega is a derivative of the Risperdal, I believe. And the respondent acknowledged that it is, in fact, a derivative or a LADOR addition of that medication. Who knows that? His disagreement is that he wants to take pills and he believes that he is fully capable of handling his day-to-day medication needs. But what do you point to in the record that shows that he lacked capacity? We have, as this is one of the most heavily litigated issues, and, in fact, it was brought up in the post-trial motion and was argued at the hearing of the post-trial motion. And at that point, the trial judge said that the doctor's opinion was, quote, clarified with the follow-up questions. And so that's where we get the testimony that he lacked capacity. And the doctor finally said the problem is also based, you have to consider the defendant's statement in court, which on the surface would indicate that with his history. In this case, we have Ms. Sims testify that they bring the respondent, they're supposed to bring him weekly pill packets, and then he's supposed to take it, and often his mother helped him. He had lived with his mother until a week prior to his admission to the hospital when he went out to an apartment on his own, and within a week, he's decompensated enough that he's admitted to the hospital. What time frame are we supposed to be looking at here? What time frame does the circuit court look at when having a hearing like this? Now, the doctor's very concerned, and I think rightfully so in this case, that what's going to happen in the future based upon past performance. But right at this snapshot of this individual sitting there in court, the record seems to indicate that that person has the capacity at that point in time to make a reasonable decision regarding the medication at that point in time. And is that the time frame we're looking at, or do we look to the future and see what could happen in the future? Okay, I disagree with part of that. What we have here is a demonstrated capacity of the respondent to accept the Invega. He has a clear reason for that. He likes that. He seems to feel it's working for him. So he has the capacity, and the doctor is correct in allowing him to consent to accept the Invega. What he doesn't have the capacity to, and the trial judge finally honed in on this, is his refusal to accept the medication in the shot form, which is a longer-term medication. And that is a lack of capacity at this point, because he won't consent to it at this point of the hearing. He won't consent to it in the future. The doctor specifically asked him when they dismissed the ECT portion, are you consenting to the medication? The respondent said no. So it's the long-range shot medication which is at issue, and his capacity to consent to that is at issue. Then the doctor felt that that was a poor choice. He said that it's also a lack of capacity, because in this case, the defendant's history is that he will take medications for a while, and then he will cease taking medication, and then he will be involuntarily admitted because he decompensates. We have a history of three or four prior admissions, so we know that is in fact a realistic pattern for this respondent. We have his statement that he doesn't want the shots, because he feels he's reliable enough to take the medications daily on his own, and that is a credibility determination for this trial judge to make. He sees the respondent testifying, he hears the doctor's testimony. The whole history shows that, in fact, the defendant cannot reliably take this medication. He also says that he has not taken the shots. He says that part of his reason for not wanting the lung acting is that he took a Risperdal and he choked on it. So in fact, getting the shot medication rather than oral medication would seem to be a much more logical choice if he's having trouble taking the oral medication, and quite frankly, his history is that he will not follow through on taking the daily medications. But as alternatives, if he's working with an ACT team, was there anything in the record about this ACT team coming up with an alternative where he would or his mother would take him someplace to pick up the oral medication every day? There is evidence in the record, and they come to his place twice a week with a weekly pill packet. And then its defendant takes the pills, theoretically, and said that his mother frequently, you know, reminds him. But now he moved out, and within a week he's decompensated because he hasn't taken his medication. There's evidence in the record that he's had halted taking the medication. So the doctor's thought, part of the doctor's reasoning is that the logical and reasoned decision is going to be the respondent doesn't want to be in the mental health center or for involuntary admission. So if he takes the long-range medication shots, which the doctor is requesting, then he's not faced with that daily battle to take the medication and his proven history of not following through on that. So he is cycling in and out of treatment because of his failure to comply with the daily medication regimen. So the logical and reasoned thing would be if you don't want to be involuntarily admitted, then you take the shot medication. Thank you very much, Counsel. Counsel, can you respond to the Counsel's argument that there was sufficient notification of alternative treatments in writing in the record? Yes. Basically, as you noted, there's nothing in the statute. In the record, it only says the written information about the ECT treatments were provided, but nothing about whether alternative forms of treatment. What if there were no alternative forms of treatment? Well, the code defines treatment as including, and it's under section, it's under the definition of treatment under the Mental Health Code, defines treatment and includes psychotherapy. So reading the plain language of the statute, it says, as well as alternative to the proposed treatment, and if you look under the definition of the treatment, in the beginning of the Mental Health Code, it includes psychotherapy. There's no, and even Laura H. does not try to say, well, appropriate and available forms of treatment. It just says treatment, alternative forms of treatment. And it's also concurrent on providing the person with more information than less. So, you know, if a person gets some written information and they can see why psychotherapy would not be appropriate for their mental condition or mental health treatment, then it could be a factor in deciding to take only, to take the psychotropic form or medication form of treatment. You're not arguing that you have to put in this written notice alternative forms of treatment that aren't going to work. I mean, if you have somebody who's severely, you know, hospitalized and in need of medication, psychotherapy is going to do okay. Well, the statute says treatment equals psychotherapy, and actually what I have, when I deal with forensic patients down in Alton quickly, and we developed like just two pages where they define what psychotherapy is, why it wouldn't work in your situation, why medication would not treat, let's say, schizophrenia or severe bipolar, and why counseling is not sufficient at this time. So I see. So if other alternatives do not work, we need to advise them as to why they would not work, right? And that way they get more cognizant of why they would not work at this time. With regard to the issue of the future medication taking, on page 65 of the record, my client testifies that the only reason he didn't take the medication was I ran out and did not take medication, got off balance, is because my medication is not delivered on time, and I called to complain that it wasn't there for me. And he also testified that I am reliable to call my counselors to demand my medication to be delivered to me. Well, how do you respond to her argument that he may have been, had capacity at that time, but the concern of the doctor, and I think the doctor's response was when they asked does he have capacity, well, he appears to, I believe so, but my concern is what's going to happen when he gets out of here or after he's released. So he has capacity at that point, but he may not have it in the future. Well, there is, the statute clearly says lacks capacity. It doesn't say will lack capacity, or has in the past lacked capacity. If the legislature, yeah. So, or you could put like lacks capacity or will lack capacity. If the legislature wanted the courts to have the power to consider future lack of capacity, that would be what it says on the statute. Also, you know, if they wanted to address this concern of outpatient treatment, there is, you know, you don't have to be hospitalized to actually have an involuntary medication order. You can be out in the community and have an involuntary medication order entered against you. So element of hospitalization is not required for involuntary medication order. Oftentimes, actually, I see outpatient orders where the client actually agrees to take the medication, and if they don't, then they'll get rehospitalized, you know. So there's ways to address future medication compliance, which is a serious issue through outpatient orders or through an involuntary med order when the person is in the community. With regard to the issue of the written order, basically there was no testimony presented as to who would administer the medication. And the hallmark of, sorry. Go ahead. The hallmark is that a person can't, a judge cannot order specific items without having evidence presented. And here there was no evidence presented. It was right at the end. Oh, here's the list, you know, after the determination. Okay. Any further questions? Thank you very much.